# JOHN OLIVER, Admr.

## *v.*

## ROSE A. FORRESTER, Executrix.

*Filed at Ottawa September 28, 1880.*

1. PARTNERSHIP—*effect of death of one partner—power and duties of surviving partners.* Where one partner in two firms dies, that terminates the existence of both firms, and the surviving partners of neither firm have any power to continue the business of the partnership, but they are required by law to wind up and close the same, and after paying the partnership debts, to distribute the assets among the surviving members and the representatives of the deceased partner.

2. The death of one partner not only terminates the partnership, but also all unexecuted portions of the partnership agreements, and the survivors have no authority to proceed to carry them out and execute their provisions, and consequently they can not lawfully execute any verbal agreement among the members relating entirely to the partnership business which is dependent on the continuance of the firm.

3. So, where A and B were partners as lumber merchants in the city of Chicago, and A, B and C were partners in the manufacture of lumber in the State of Michigan, and an agreement was entered into between the two firms that the latter.firm was to buy logs, and manufacture lumber and ship the same to the lumber yard of the former, to be by them sold, they guaranteeing to A, B and C the cargo price of the lumber, and the profits on the sales to be equally divided between the two firms, and A died, it was held that this verbal agreement was terminated, and that if B, the surviving partner of the Chicago firm, received any further shipments of lumber under such agreement, or purchased other lumber, after A's death, which was lost by fire, A's estate was not chargeable with any part of the loss.

4. If a surviving partner is required to execute contracts entered into by the firm before the death of a member thereof, it is only so as to contracts entered into with persons not members of the firm, and not in respect to contracts made between the several members of the firm as to the mode of conducting the partnership business.

5. While it may be conceded that a surviving partner in a mercantile business may make small purchases of some articles of the stock to render it more saleable, and to enable him to close it out, he has no power to make large purchases intended to continue the business. But a surviving partner in the lumber business has no right to purchase a cargo of lumber, and charge the estate of the deceased partner with any part of the loss caused by its destruction by fire.

6. Where one partner of a firm engaged in the purchase and sale of lumber, dies at a dull season for making sales, the survivor will have the right to delay a reasonable time in making sale of the lumber on hand. He will not be bound to force it on the market when there is but little demand for it, and thus sacrifice the property; and if an accidental loss of the stock occurs by fire during such reasonable delay, the estate of the deceased partner must bear its share of such loss.

7. Where a surviving partner did not intend to *continue* the firm business, in the sense condemned by the law, but did, under a mistaken idea that he was bound to complete a verbal agreement with another firm of which the survivor and the deceased partner, with another, were members, continue to receive lumber, such surviving partner ought not to be charged as with a conversion of the whole of the partnership property, unless the business was in fact so transacted by him as to inseparably commingle the property proper of the late firm with that which was put into the business after his partner's death, from purchases, etc., so that one can not be distinguished from the other. If the property was so intermingled, he will be liable to be treated as having converted the assets of the firm to his own use, and should be held to account for the deceased partner's net interest in the partnership assets at the time of his death, and will be chargeable with interest thereon.

Writ of Error to the Appellate Court for the First District; the Hon. T. D. Murphy, presiding Justice, and the Hon. George W. Pleasants and Hon. Joseph M. Bailey, Justices;—heard in that court on appeal from the Circuit Court of Cook county.

This was a bill in chancery by Rose Forrester, executrix of the last will of Tunis Ryerson, deceased, against John Oliver, administrator, and Wilhelmina Johnson, administratrix of the estate of Peter Johnson, deceased, for an account of partnership matters.

Ryerson and Johnson had for several years prior to July 11, 1871, been largely engaged in the lumber business in the city of Chicago. They were also owners of one-half of a saw mill at Muskegon, Michigan, which they carried on in partnership with Esau Tarrant, under the firm name of Tarrant & Co. Ryerson died on July 11, 1871. There was at his death a large stock of lumber on hand in the yard, beside a large amount of firm assets. Tarrant & Co. also had a

stock of logs at their mill to be sawed. When the partnership with Tarrant was formed it was agreed that the lumber from the mill should be sent to Ryerson & Johnson, at Chicago, to be disposed of by them, they being only bound to account for the same at the market price, and having the privilege either to sell it on arrival, by the cargo, or to take it into their own yard, to be used in their business, and to be charged only the market price at the time of the appropriation.

After the death of Ryerson, a large quantity of lumber from the mill was received by Johnson, some of which he sold by the cargo, and could have sold it all in that way, but a large portion of it was taken by him into the lumber yard, which he continued to carry on after the death of his partner, and mixed with the other stock used in carrying on his business.

Johnson, after the death of his partner, instead of proceeding to close up the business of the firm, and dispose of its property, as required by the act of 1869, (see Session acts of 1869, p. 300), continued to carry on the business of the lumber yard, without any change, using the firm name and all its property and assets, and buying and selling as usual. During the season of 1871 there were cut at the mill 9,520,000 feet of lumber, of which 5,000,000 feet were cut after Ryerson's death; and all the lumber cut at the mill during that season and prior to the great fire of 1871, was shipped to Ryerson & Johnson at Chicago, pursuant to the agreement. At the time of Ryerson's death there was in the yard of Ryerson & Johnson, at Chicago, a large stock of green lumber, all of which, together with the lumber put in the yard after Ryerson's death, except one cargo, was lumber manufactured at the mill of Esau Tarrant & Co., at Muskegon; and there was also on hand a quantity of seasoned lumber. Some portions of the lumber shipped by Tarrant & Co. to Ryerson & Johnson, after Ryerson's death, was sold by the cargo on arrival at Chicago.

After Ryerson's death, Johnson continued the business as before, in the firm name, occupying the same yard and using the same stock of lumber, cash and other assets, buying, selling and paying firm liabilities, retaining the same book-keeper, who was a brother of the widow of Ryerson, and resided with her, and the widow resided near, and was frequently at the yard, and it did not appear that she ever made any objections to the manner in which the business was carried on after her husband's death.

The contents of the lumber yard were destroyed in the fire of October 9, 1871, involving a loss of $49,054.69, of which only $5272.50 of insurance was recovered, leaving a net loss of $43,782.19. The half of this loss was, by the decree of the circuit court, charged to the estate of Ryerson. This decree was reversed by the Appellate Court, and a decree rendered charging the whole loss upon the estate of Johnson.

Messrs. GARDNER & SCHUYLER, for the plaintiff in error:

In the circuit court two questions were made, viz.:

1. Whether Johnson, by continuing the business in the manner and under the circumstances shown, did not make himself personally liable for the loss occurring by fire.

2. Whether the statute of 1869, requiring a surviving partner to settle the partnership estate in accordance with its provisions, did not forbid Johnson from doing as he did, and throw the whole risk of loss upon him in such a case.

The same questions were made in the Appellate Court, and also arise under the assignment of errors in this court.

The statute of 1869 has nothing in it "which changes the nature of the relation between the surviving partner and the representatives of the deceased partner," and "is to be considered as confirmatory of their respective rights as previously recognized in equity." *Nelson* v. *Hayner et al.* 66 Ill. 487; Sess. Laws, 1869, p. 301, sec. 3.

In equity, surviving partners are treated as trustees, with the fiduciary relation between them and the representatives of the deceased partner, of trustees to *cestuis que trust.*

*Nelson* v. *Hayner et al.* 66 Ill. 487; *Hutchinson* v. *Smith,* 7 Paige's Ch. Rep. 26; *Evans* v. *Evans,* 9 id. 178; *Murray* v. *Mumford,* 6 Cowen, 441; *Tremper* v. *Conklin,* 44 N. Y. Rep. 58; *Betts* v. *June,* 51 id. 264; *Washburn* v. *Goodman et al.* 17 Pickering, 519.

While death dissolves the partnership, yet it has a limited continuance for the purpose of winding up its affairs. Cases cited and also Lindley on Part. 830; *Schenkel* v. *Dana,* 118 Mass. 237.

3.  As to outstanding contracts, the partnership continues. Gow on Partnership, (2d ed.) 253; Collyer on Partnership, 2d Eng. ed. 130, 73; *Caldwell, Admr.* v. *Stileman,* 1 Rawle, 212; *Fereira* v. *Sayres,* 5 Watts & Serg. 210; *Cope* v. *Warner, Exr.* 13 Serg. & Rawle, 411; *Hoberton* v. *Johnson,* 10 Barr (Pa. St.), 124; *Brown Exr.* v. *Higginbotham,* 5 Leigh, 583; *Walker* v. *Goodrich,* 16 Ill. 341; *Smyth et al.* v. *Harvie et al.* 31 id. 62; *Mason* v. *Tiffany,* 45 id. 392 *Willett* v. *Blandford,* 1 Hare, 253; *Crawshay* v. *Collins,* 15 Vesey Jr. 218; *Washburn* v. *Goodman,* 17 Pick. 519; *Ex parte Williams,* 11 Vesey Jr. 5.

In the case at bar, there were two important contracts outstanding, made by the firm, viz:

1.  The contract for their lumber yard, having ten months to run at a yearly rent of $4000; and

2.  The contract with Esau Tarrant, running to November 8, 1871.

Neither of these contracts could be terminated without great loss to the firm, nor could they be avoided without the consent of the other parties to them. The surviving partner was bound to perform them, and their performance involved a continuance of the co-partnership until they should be fully carried out.

It is not the true rule to charge the surviving partner with the value of the partnership estate at the date of the decedent's death.   He is bound to use reasonable care and diligence in closing out the business, and, if he does so, is only liable for what is realized in his hands when it is done. *Moore* v. *Huntington*, 17 Wall. U. S. 417.

Messrs. FORRESTER & BEEM, for the defendant in error:

If a surviving partner uses the firm assets in continuing the business, he does so at his own risk, and must bear any loss that may result.   Story on Part. sec. 322; *Washington* v. *Goodman et al.* 17 Pick. 519; Parsons on Part. 438, 443; *Booth* v. *Parks*, Beatty, 444; *Clements* v. *Hall*, 2 De Gex and Jones, 186; *Toulman* v. *Copeland*, 2 Phillips Ch. 714; Lindley on Partnership, 1041;   act of 26 March, 1869— Laws of 1869, p. 300.

Mr. JUSTICE WALKER delivered the opinion of the Court:

When Ryerson died, both firms were dissolved.   It terminated the firm of Ryerson & Johnson, as lumber dealers, and the partnership of Ryerson, Johnson and Tarrant, doing business under the name of Tarrant & Co., as manufacturers of lumber.

Under the well settled rules of law, when these partnerships were terminated, the surviving partners of neither firm had power to continue the business of the firms, but were then required to wind up and close the business, and after paying the firm debts, to distribute the proceeds of the assets amongst the surviving partners and the representatives of the deceased partner.   After Ryerson's death, Johnson had no legal authority to purchase lumber and continue the business, so as to bind Ryerson's representatives, or his estate. It was his duty to sell the property, collect the debts due the firm, within a reasonable time, and account with Ryerson's executrix for all sums she was entitled to receive, after paying the debts owing by the firm.

Nor did Tarrant and Johnson, as remaining partners of the firm of Tarrant & Co., have the right to purchase logs, manufacture lumber, and ship it to Chicago for sale, so as to bind the estate of Ryerson. There was no such authority conferred by the articles of co-partnership, and it was forbidden by law. Hence, they could not continue the business so as to bind Ryerson's estate for any loss thereby occasioned. It only remained for them to wind up the business of the co-partnership, and account for and distribute the surplus amongst themselves and the executrix.

But it is urged that there was an agreement entered into by Ryerson, Johnson and Tarrant, after the co-partnership of Tarrant & Co. was formed to buy logs and manufacture lumber in Michigan; that when it should be sawed, it should be shipped to the lumber yard of Ryerson & Johnson, in Chicago, to be sold. And that Ryerson & Johnson agreed to guarantee to Tarrant the cargo price of such lumber, and, if profits were realized, they were to be divided between the partners; and that when Ryerson died, Tarrant, under that agreement, shipped lumber to Johnson, and he received and held it on the same terms and under the agreement, and it was burned, and that Ryerson's estate should bear half of the loss.

On Ryerson's death all knew that it ended the partnership as to all unexecuted portions of the partnership agreement. Being terminated, the survivors had no authority to proceed to carry out the agreement and execute its provisions. And if such unexecuted provisions of the articles of co-partnership can not be carried out by the survivors, by what rule can this verbal agreement between themselves alone, relating entirely to the partnership business, and which agreement was entirely dependent, at least on the continuance of the firm of Tarrant & Co. for its performance, be carried on till it was performed, notwithstanding the dissolution of both firms? When they terminated, this verbal agreement being wholly dependent for its performance on the continuance of the firms and their

business, it was also terminated at the same time and by the same event.

If it be claimed that the surviving partners were bound to execute contracts entered into by the firm, it may be answered that if the proposition is true, it is so *only* as to contracts entered into with persons *not* members of the firm, and not to contracts made between the several members of the firm as to the mode of conducting the business of the firm. We know of no rule that requires the surviving partners to continue the business of the firm so as to execute and carry into effect agreements as to the mode of carrying on the business. Suppose it had been agreed between the partners of the firm of Tarrant & Co. that on a future specified date the firm would purchase land, erect large and expensive mills, and purchase logs, manufacture lumber and sell it on the market, in connection with their other partnership business, and Ryerson had died before the time arrived, would any one contend that the surviving partners could go on and carry out the agreement, using the funds of the partnerships for the purpose, and thus bind Ryerson's estate? We apprehend not. And although the case supposed may be extreme, it is apprehended both depend on precisely the same principle, and that no well founded distinction can be made. This unexecuted agreement, as to the mode of transacting the firm business, therefore fell with the termination of the firms themselves. As it was dependent on the continuance of the business of the firms, the power to perform its unexecuted portions fell with the ending of the firms themselves. And Tarrant had no legal right to continue to ship, or Johnson to receive, lumber under the agreement. All that was shipped subsequent to Ryerson's death was therefore not under the agreement, and Ryerson's estate is liable for no portion of its loss, and the decree of the circuit court was wrong in allowing Johnson to retain the money of the firm of Ryerson & Johnson to pay for its loss.

Again, Johnson purchased a cargo of lumber after Ryerson's death, placed it in the yard where it was burnt, and he claims that Ryerson's estate should bear one-half of that loss. Whilst it is conceded that a surviving partner in mercantile business may make small purchases of some articles of the stock to render it more saleable, and to enable him to close it out, he has no power to make large purchases intended to continue the business. We perceive no necessity of purchasing a cargo of lumber consisting, perhaps, of lumber of the usual varieties and grades, amounting no doubt to a considerable sum. If this be true, then Ryerson's estate should not be held liable for any portion of the loss by its destruction.

Johnson, however, had the right to delay a reasonable time in making sales of the lumber on hand. He was not bound to force it on the market when there was but little demand, and thus sacrifice the property. If the season was dull when Ryerson died, and from the course of trade there was reason to believe that in a few months the demand would revive, Johnson had the right to wait a reasonable time, for the purpose of procuring better prices, and avoiding loss. The evidence shows that Ryerson died in one of the dullest seasons of the year, and that past experience tended to establish the fact that prices would be better in the following autumn, and mere delay, under the circumstances, seems not to have been unreasonable. Johnson should, therefore, not be charged on that account with the entire loss of the lumber on hand at the termination of the partnership. The estate of Ryerson should bear its proportion of that loss. But Johnson should bear the loss of the lumber received by him after Ryerson's death.

According to the views here expressed, the Appellate Court erred in holding that Johnson's estate should account for half of the lumber held by the firm at the time of Ryerson's death, and which was destroyed by fire. If Johnson paid Tarrant with funds of the firm of Ryerson & Johnson, for

the lumber shipped to Johnson after Ryerson's death, and it was burnt, his estate has no right to retain the portion of the money thus paid to which Ryerson's estate would be entitled had such lumber not been shipped and burnt. And Johnson's estate should account as though such shipment had never been made or loss sustained. Nor is Ryerson's estate chargeable with any portion of the loss of the cargo purchased after the partnership was terminated, and the executrix, on stating the account, should not be charged with any portion of that loss.

The record does not show whether after the death of Ryerson the business was so managed by Johnson that his transactions in the lumber received by him from these Michigan mills, and in the cargo of lumber bought in the market, were conducted in such manner that they can be distinguished from his transactions in the lumber and other property of Ryerson & Johnson on hand at the time of Ryerson's death. If the business was so transacted, and any part of the lumber (on hand at the death of Ryerson) was destroyed by fire in October, 1871, in such case Ryerson's estate should bear one-half of that loss, but should not be charged with any part of the loss of lumber received after his death, from the Michigan mills, or with any part of the loss, if any, of the cargo of lumber bought in the market by Johnson.

We think, from an examination of the facts, so far as shown in this record, that Johnson did not intend to *continue* the business of the firm of Ryerson & Johnson, in the sense condemned by the law, but that he acted on the mistaken idea that he was bound, as surviving partner of Ryerson, to complete and perform the agreement made by them with Tarrant, to continue to receive, take and dispose of, and account for, the lumber from the Michigan mills. We are not, therefore, prepared, on the evidence in this record, to require him to be charged as with a conversion of the whole of the partnership property; nor, should he be so charged unless it appeared the business was in fact so transacted by him as to inseparably

commingle the property proper of the late firm of Ryerson & Johnson with that which was put in the yard after Ryerson's death, so that the amount thereof can not be distinguished from the cargo bought in the market and from the Michigan mills. Of course, if the lumber was so commingled, and the books so kept, that the one can not be distinguished from the other, in that case Johnson was liable to be treated as having converted the assets of the late firm to his own use, and should be held to account for the value of Ryerson's net interest in those assets at the time of his death, and interest thereon.

The Appellate Court, in reversing the decree of the circuit court, did right; but that court erred in rendering a final decree upon this record for a specific amount.

The decree of the Appellate Court is reversed, and the cause remanded to that court, with directions to remand the cause to the circuit court, that an account may be taken, in some appropriate mode, in accord with the views herein expressed.

*Decree reversed.*

Mr JUSTICE CRAIG dissenting:

I do not concur with a majority of the court in the decision of this case.

Two questions of law arise upon the record:

1.   Whether Johnson became personally liable for the loss occasioned to the estate of Ryerson by the fire of October 8 and 9, 1871, by continuing the business of the firm after the death of Ryerson in the manner shown by the evidence, and by using in the business the stock of lumber, and other property of the firm, together with the lumber product of the mill of Esau Tarrant & Co., delivered under the contract of Ryerson & Johnson with that firm, instead of selling the same at once upon Ryerson's death and realizing the proceeds for the estate.

2.   Whether the act of March 26, 1869, requiring a surviving partner to settle the partnership estate in accordance

with its provisions, did not forbid Johnson using the property of the firm in the manner shown by the evidence, and subjecting it to the risk of loss attending such a course, even if the representatives of the deceased partner consented to it, or failed to object.

Ryerson, as appears, died July 11, 1871, and the lumber for which appellee seeks to hold the estate of Johnson liable was destroyed by fire October 8 and 9, of the same year, in Johnson's possession as a surviving member of the firm of Ryerson & Johnson.

It is contended by appellee that, as Johnson continued the business of the firm after the death of his partner Ryerson, his estate is liable for the loss that occurred by the fire.

Did Johnson continue the business in such a manner that the law would regard him as holding the partnership assets and property at his own risk?

On the death of Ryerson, Johnson, as surviving partner, had the right to dispose of the partnership property, collect the debts due the firm, and pay the partnership liabilities from the proceeds of the assets. He was entitled to a reasonable time to dispose of the property, and it was his duty to realize as large an amount from the sale of the partnership property as reasonably could be made by the exercise of a proper business talent.

It appears that Johnson was a careful, prudent business man, and conducted the business to the best of his ability. That at the time of Ryerson's death, the firm was a joint owner with Esau Tarrant of a saw mill at Muskegon, Michigan, and of a large stock of saw logs at the mill, which it was necessary to manufacture into lumber, in order to dispose of the same in a profitable manner; that there was a written article of co-partnership, dated November 8, 1870, to continue one year, between Tarrant and the firm of Ryerson & Johnson; that each had a capital of $15,000 in the business.

It also appeared that a verbal contract had been made between Tarrant and Ryerson & Johnson, that all the lumber

manufactured at the mill during the season of 1871 should go to the yard of Ryerson & Johnson, in Chicago, and they were to pay E. Tarrant & Co. the market price for the same.

It also appears that 9,520,000 feet of lumber was cut at the mill that season, and shipped under the contract to the firm at Chicago, about one-half of which was sawed after the death of Ryerson.

When Ryerson died, there was in the yard a large stock of green lumber, all of which, together with the lumber put in the yard after Ryerson's death, except one cargo, was manufactured at the mill of Tarrant & Co.

It also appeared, from the evidence of lumber dealers, that it was greatly to the advantage of the business, and the firm interests and prudent management required that the business should be continued in the regular way during the season, and it could not be closed to advantage, nor without sacrifice, until in the fall or the following spring.

It also appeared that the entire stock of lumber, and other property in the yard, was destroyed, without any fault or negligence of any person, by the fire of October 8 and 9, the net loss of the firm being $43,782.19.

Now, while it was possible for Johnson to have disposed of the lumber on hand, when Ryerson died, before the fire, yet it is evident, from the facts, that he could not have done so without great loss to the firm. The great bulk of the lumber was green, and at that season of the year unsaleable. By holding it until fall, it would have been marketable, and could then have been sold without loss to the firm.

Under such circumstances, we do not regard it the duty of the surviving partner to sell at once, and at all hazards, the property. Indeed, had Johnson proceeded immediately, and made sale of the property at a sacrifice, at that season of the year, when it was unsaleable, there would have been much more reason for holding him responsible for the loss than now.

Johnson was entitled to a reasonable time to settle up the affairs of the firm. Was three months an unreasonable time, taking into consideration the nature of the property and the season of the year?

.It would, under the evidence in this case, be establishing, not only an arbitrary, but a hard rule, to hold that Johnson was compelled at all hazards to sell the property within three months, and yet the fire occurred less than three months after Ryerson's death.

There is another fact to be considered. Johnson was bound to receive the lumber cut at the mill of Tarrant & Co. or else respond in damages for a breach of the contract, notwithstanding the death of his partner. There was no lumber purchased by Johnson after the death of his partner, except one cargo. The lumber received came from the mill of Tarrant & Co., and was received under a contract made long before the death of Ryerson. This he was bound to receive. Johnson had the right to collect whatever was due the firm. He had the right to sell the firm property. He was bound to receive lumber of Tarrant & Co. under the contract. Now, for the reason he has done what the law gave him the right to do, and what he was bound to do, it is contended he continued the partnership business on his own account, and must be held accountable for losses not caused by his fault.

In *Nelson* v. *Hayner*, 66 Ill. 487, it was held that the death of either partner is *ipso facto* from the time of the death a dissolution of the partnership; but in the same case it is said: " Notwithstanding such dissolution, a community of interest still exists between the survivor and the representatives of the deceased partner, and the representatives have a right to insist on the application of the joint property to the payment of the joint debts and a due distribution of the surplus. So long as these objects remain to be accomplished, the partnership may be considered as having a limited continuance." See, also, Gow on Partnership, where the same doctrine is announced.

The partnership was dissolved upon the death of Ryerson, but although dissolved, it continued for the purpose of closing up the affairs of the firm. *Burkhart* v. *Dreper,* 4 De Gex, M. & G. 542.

We think Johnson was only required to use reasonable care and diligence in closing out the business, as held in *Moore* v. *Huntington,* 17 Wall. 417, and when this was done he could only be held liable for the amount realized from the partnership assets, for which he has fully accounted.

In regard to the second proposition, we perceive nothing in the act of 1869 which prevented Johnson from settling up the affairs of the firm in the manner he did. As was held in *Nelson* v. *Hayner,* 66 Ill. 487, the act of 1869 contains nothing which changes the nature of the relation between the surviving partner and the representatives of the deceased partner. "It is to be considered as confirmatory of their respective rights as previously recognized by equity."

But it is said no inventory was filed by Johnson. Whether an inventory and appraisement of the assets of the firm were made and returned to the county court within sixty days after the death of Ryerson, the record is silent, but if it was not done, the failure to observe this requirement of the statute could not affect this case. No loss occurred for the reason an appraisement and inventory was not returned. If such was the fact, it is not claimed that Johnson received any of the assets of the firm or converted them to his own use. Nor is there any dispute in regard to the amount of the property, its quality or value. In what manner, then, appellee was damaged, if Johnson failed to observe these provisions of the statute, is not apparent. If no loss occurred, upon what principle can Johnson be held liable? We are aware of none.

Under the second section of the act the representatives of the deceased partner might have compelled the return of an inventory and appraisement if they had desired it, and the fact that they never required it, raises the presumption that

they did not regard it of any benefit or importance. Had the surviving partner, Johnson, purchased heavy bills of goods and carried on the business in the same manner as it was transacted before Ryerson's death, as it was insisted in the argument he did, the case would have been different, but such was not done. He received lumber which had been bought before his partner's death, which he was bound to do or pay such damages as would have been recovered for a breach of the contract, and this was all the lumber received into the yard except one cargo, which is not of sufficient importance to change the result.

The law undeniably requires a surviving partner to proceed with all reasonable dispatch and close up the business of the firm, and where loss has occurred for a failure to observe this duty, it should be borne by the one in default, but what might be regarded as a reasonable time in one case could not be so regarded in another. Under the circumstances of this case, less than three months could not be regarded time sufficient to dispose of the property, and as it was consumed by fire within that time without the fault of Johnson, he can not be held liable.

SCOTT, J.: I concur in this dissenting opinion.

SHELDON, J.: I also concur in the dissenting opinion, except as to the one cargo of lumber purchased after the death of the partner.