GEORGE F. KIMBALL, Guardian,

*v.*

OLIVER S. LINCOLN *et al.*

*Filed at Ottawa June 20, 1881—Rehearing denied September Term, 1881.*

1. PURCHASER—*who may become a purchaser—of the relation between surviving partners—and between a surviving partner and the representatives of the estate of the deceased partner.* A surviving partner can not become a purchaser of the property of the firm at his own sale,—he can not thus occupy the position of both vendor and purchaser;—nor can he become the purchaser of such property from a co-trustee.

2. But this rule has no application to the case of a purchase by a surviving partner of the share in the partnership property belonging to the estate of the deceased partner, from the personal representatives of the latter. In such a transaction the surviving partner is not to be considered as dealing with trust property, in that sense which would bring the sale within the legal prohibition.

3. SALE—*by executor of a deceased partner to a surviving partner—what will pass by the sale.* The executor of a deceased partner sold to the surviving partner "all the interest in the flour mill and property of the firm, which the testator had at the time of his death, or which the executor then had, the sale

to include the debts due said firm by account or otherwise." The guardian of one of the legatees under the will of the testator, filed his bill in chancery against the executor and the surviving partner, for an account of certain profits which it was alleged had been earned by the firm property while in the hands of the surviving partner subsequent to the death of the testator. But it was *held*, that whatever profits had been thus earned, they passed by the sale from the executor to the surviving partner,—so there was no ground for an accounting.

4. PARTNERSHIP—*division of assets between surviving partners and representatives of deceased partner.* Where the debts of a partnership have been paid, a surviving partner and the representatives of the deceased partner may properly make a specific division of the remaining assets between them, if they choose to settle the business in that way. So where an executor of a deceased partner, upon making sale of the interest of the testator in the partnership property to the surviving partner, received in part payment a *chose in action*, it was held no ground of complaint on the part of a legatee under the will.

5. EVIDENCE *as to value of land sold by an executor—recital in deed.* Where an executor sold real and personal property at private sale, under power given in the will, upon bill filed by a legatee, the propriety of the sale coming in question, it was *held*, the recital in the deed for the land, of the amount of the consideration paid, was not conclusive as to the value of the land. It might be *prima facie* evidence, but that is all.

6. SALE BY AN EXECUTOR—*inadequacy of price.* Mere inadequacy of price, in the absence of fraud, is not enough to impeach an executor's sale of property of the estate.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Messrs. G. W. & J. T. KRETZINGER, for the appellant:

Under the statute the complainant is entitled to an accounting with the surviving partners, without respect to the question of the sale of February 8, 1875, the power of the executors to sell, the right of the surviving partner, George, to purchase, or the property that passed by such sale. *Forrester v. Oliver et al.* 1 Bradw. 263; Story on Part. sec. 343.

The required accounting, the filing of a true inventory and appraisement by the surviving partners, can not be waived by the executor, and a sale by him without such accounting does not relieve the surviving partners from the same.

The executor is only entitled to receive, after the settlement of the partnership business and the sale and disposition of the partnership property, that portion in money which belongs to the heir or devisee. No power is conferred upon him to sell, but simply the right to receive.

The executor can not sell the property for the reason that he has no title in it. The title is exclusively in the surviving partners. While the executors were duly authorized to sell the real estate when considered advantageous, the proceeds to pass directly to the heir, no power is found in the will authorizing the executors to sell any of the personal property, especially the profits and income, after the death of the partner; hence the sale of one-fourth interest in all the choses in action, open accounts, notes and judgments belonging to the late firm, was unauthorized.

The surviving partner, as trustee, could not, in the first instance, buy this interest of the estate. If such a sale to and the purchase by him were allowed, he is required to show the utmost good faith in disclosing to the executors all the knowledge he had, and all the facts under his control, in relation to the value of the personal property. See *Nelson* v. *Hayner*, 66 Ill. 491; *Sherlock* v. *Village of Winetka*, 59 id. 401; *Ogden* v. *Astor*, 4 Sandf. 334; *Farnam* v. *Brooks*, 9 Pick. 234.

Surviving partners being trustees of the heirs and devisees of the deceased partner, it follows that any act of theirs in relation to the trust estate, prejudicial to the interests of the *cestuis que trust*, can not be maintained on behalf of such trustee against the heir. They can not purchase at their own sale. *Michoud et al.* v. *Girod et al.* 4 How. 503.

A surviving partner is not entitled to compensation for services after the dissolution of the partnership, in the absence of an express contract to that effect. *Tillotson* v. *Tillotson*, 34 Conn. 366; Collyer on Part. secs. 199, 328, note; Story on Part. sec. 33, note; 3 Kent's Com. (5th ed.) 64; *Beatty* v. *Wray*, 19 Pa. St. 516; *Washburn* v. *Goodman*, 17 Pick. 519; *Schenke* v. *Dana*, 118 Mass. 239.

Mr. FRANCIS E. CLARKE, and Messrs. COOKE & UPTON, for the appellees:

There is no rule of law that prevents surviving partners from becoming purchasers from the representatives of the deceased partner of his share. *Chambers* v. *Howell,* 11 Beav. 6; Lindley on Part. (3d ed.) 980; Parsons on Part. side paging 442, note (s); Story on Part. (6th ed.) 551, note 3; Collyer on Part. (6th ed.) 382.

If an executor of a deceased person is not a member of the firm, it is competent for him and the surviving partners to agree that the share of the deceased shall be ascertained in a particular way or be taken at a particular value. Collyer on Part. (6th ed.) 382, sec. 248; 2 Lindley on Part. (4th ed.) 932; *Ray, Exrx.* v. *Vilas,* 18 Wis. 189; *Same case,* 20 Wis. 463; *Davies* v. *Davies,* 2 Keen's Ch. Rep. 534; *Case* v. *Abeel,* 1 Paige, 393.

If the survivors carry on the business and make a profit by it, which is credited to the firm, they may be allowed some compensation for their services, unless the articles of agreement provide otherwise. Parsons on Part. 443; Lindley on Part. (4th ed.) 775.

Surviving partners, if they carry on the business for the benefit of the estate of the deceased partner, are entitled to an allowance for so doing, unless they are also his executors, in which case they can make no charge for their trouble. 1 Lindley on Part. 775; Same, vol. 2, 1046; *Brown* v. *Detostel,* Jacobs' Rep. 284; *Griggs* v. *Clark,* 23 Cal. 427; *Ambler* v. *Bolton,* 41 Law J. Ch. 783; *Hite et al.* v. *Hite, Exr.* 1 B. Mon. 179; *Willett* v. *Blanford,* 1 Hare, 253.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by George F. Kimball, guardian of Weston G. Taft, in the circuit court of Cook county, against O. S. Lincoln and Lydia F. Kimball, execu-

tors of the estate of John W. Taft, deceased, and L. D. Warren and C. B. George, surviving partners of the firm of Warren, Taft & Co., praying for an account.

John W. Taft died testate December 31, 1870, leaving a widow and one child, Weston G. Taft. At the time Taft died he was a member of the firm of Warren, Taft & Co., which was composed of himself, Lorenzo D. Warren, and Charles B. George. The firm owned a flouring mill at Waukegan. Warren owned a half interest, and George and the deceased each one-fourth. The business of the firm was commenced in June, 1869. They purchased grain, made flour for sale, and also kept a feed store and grocery in connection with the mill. After the death of Taft the other two partners, Warren and George, continued to occupy the mill, and carried on the business in the old firm name until the 8th day of February, 1875, when the executors, for the sum of $5000, sold and conveyed to George the one-fourth interest which the estate of Taft had in the property, real, personal and mixed. The deceased, by his will, gave all his household furniture to his wife, Lydia F. Taft, now Kimball. All the balance of his property he gave to his son, Weston G. Taft. The real estate he directed the executors to convert into money as soon after his death as could be done advantageously and to the best interest of his estate. The proceeds of such sale he gave to his son. For the purpose of carrying into effect the provisions of the will, he authorized the executors to sell and convey all of his real estate as soon as in their judgment it could be done for the interest of his estate, either at public or private sale, for such sum or sums as they might see fit, and on such terms of payment as they might think advisable ; and upon making sale the executors were authorized to make deeds. The testator appointed his wife, Lydia F. Taft, and Oliver L. Lincoln, executors of his will, and authorized them to lease his real estate until it could be sold.

The complainant, in his bill, does not question the sale of Taft's interest in the mill, but he seeks an accounting of the

profits made by the surviving partners out of the business, from the date of Taft's death to the time the mill was sold. It is in substance alleged in the bill, that the executors sold to George, one of the surviving partners, the one-fourth interest Taft held in the real estate for $4000, and one-fourth interest in the personal estate for $1000, in the month of February, 1875; that from the date of the death of Taft to that date Taft's interest in the partnership property had earned large profits, being employed in the milling business by the surviving partners; that the profits did not and could not pass by the sale to George, but descended directly to Weston G. Taft, under the will; that the profits amounted to about the sum of $25,000, of which Weston G. Taft was entitled to one-fourth; that the executor had no authority, under the will nor at law, to sell the same, and the surviving partner, as trustee, was not entitled to purchase the same.

The complainant contends, that under the statute he is entitled to an accounting with the surviving partners, regardless of the sale made by the executors to the surviving partner; while, on the other hand, the defendants in the bill base their defence on the alleged fact that there was a *bona fide* sale by the executors to George, one of the surviving partners, of all the interest in the partnership assets which belonged to the estate of the deceased partner, and that under the law no other or further accounting was required.

The main, and. indeed the only, question that it will be necessary to consider, is whether the purchase by George, from the executors, of all the interest belonging to the estate of Taft in and to the partnership property, can operate as a bar to complainant's right to an accounting. If the executors had the power to sell the property, and if the relation of George, as surviving partner, did not prevent him from becoming a purchaser, and if the sale was honestly and fairly made, without fraud or deception, we perceive no ground upon which the bill can be maintained.

There is evidence in the record tending to prove that the property was, at the time of the sale, worth more than George contracted to pay for it; but the decided preponderance of the proof is, that he paid all that Taft's interest was worth. The property sold consisted of both real and personal property. It was sold in bulk for $5000. The real estate had been inventoried a short time before the sale at $16,600, but while seven or eight witnesses testified in regard to its value on the trial, none of them placed the value higher than $10,000, which would make the one-fourth interest belonging to the Taft estate at the time of the sale worth $2500. In regard to the value of the personal estate, the only evidence relied upon was an inventory, which was made the week before the sale, in which the net amount of assets, both real and personal, was appraised at $39,064.38. In this estimate the real estate was invoiced at $16,600, and $849 of uncollectible accounts were included. Deducting from the $39,064.38 the invoice price of the real estate, $16,600, and uncollectible accounts, $849, the remainder would represent the net amount of personal property, $21,615.38, one-fourth of which, $5403.84, represents the interest the Taft estate had in the personal property, less the amount which Taft was indebted to the firm on the books of the company, which was conceded by the executors to be $3410.07. Deducting this from Taft's share of the assets would leave the net amount of personal property $1993.77. This, added to the interest in real estate, which was $2500, makes a total value of property sold $4493.77. It is true the consideration for the real estate named in the deed made by the executors to George was $4000, but that is not conclusive as to the value of the property or the amount paid therefor. It may be *prima facie* evidence, but that is all.

But suppose that the property was sold for less than it was worth by the executors, such fact would not, of itself, vitiate the sale. Inadequacy of price is not sufficient to defeat a sale of property. If such was the rule, there would be no

stability in the sales of property. If every sale was liable to be set aside for inadequacy of price alone, no person would ever be safe in selling or buying, nor would there be any stability to titles to property sold. If, however, the figures above given are incorrect, and the property was worth more than thus estimated, the sale, in the absence of fraud, could not be impeached, and none has been shown by the evidence in the record.

It is argued that the executors were ignorant of the true condition of the business; but this can not be. An inventory showing the condition of the property and business was filed by the surviving partners in the county court of Lake county, on the 8th day of February, 1871. In 1873 an inventory was made by Southwick, who had been employed for that purpose by one of the executors and George. Another inventory was made January, 1874, and again in 1875. The executors could not, from the evidence, have been ignorant of the condition and value of the property, unless they purposely remained in ignorance. There was no concealment of any fact from the executors by the surviving partners, nor was there any fraud or misrepresentation, but the inspection of the books of the surviving partners was open to them, and they had every facility for knowing the true condition of the partnership business.

But it is said that George, being a surviving partner, held the property that belonged to the estate of Taft in trust, and occupying that position he could not become a purchaser from the executors of the estate, who occupied the same relation to the property. A surviving partner has the legal right to the partnership effects; but in equity he is considered merely as a trustee, to pay the partnership debts and dispose of the effects of the concern for the benefit of himself and of the estate of his deceased partner. *Case* v. *Abeel*, 1 Paige, 393. In disposing of the property, in the absence of an executor or administrator of the deceased partner, he could not buy the partnership effects himself,—he could not at the same time

occupy the position of vendor and purchaser, which would be the case if he was allowed to buy at his own sale. Nor could he buy of a co-trustee. An executor or trustee can not purchase trust property from a co-executor or co-trustee; but the reason that would forbid a transaction of this character has no application to a case where a surviving partner purchases property from the executor or administrator of the deceased partner, and hence the rule which would govern the one case can not control the other.

*Chambers* v. *Howell*, 11 Beav. 6, is a case in point. There, the surviving partners had purchased the partnership effects from the administratrix at a specified sum, and subsequent to the purchase the beneficiaries under the will of the deceased partner, filed their bill against the surviving partners, asking to have a share in the business. In the decision of the question presented by the pleadings in the case, it was held that there is no such principle in equity that surviving partners can not become purchasers from the representatives, of the share of a deceased partner.

In *Ray, Exrx.* v. *Vilas*, 18 Wis. 169, it is said: "The power of the executrix to transfer to the surviving partner, or to anybody else, the interest of the deceased in the firm assets being undoubted, the question is whether she could receive in payment a chose in action. We are not aware of any rule prohibiting this. We know of no reason why the surviving partner and the representatives of the deceased may not, assuming the partnership debts to be paid, make a specific division of the remaining assets."

Here, the interest of the estate of Taft was in the hands of the surviving partners, and they had the right, in winding up the affairs of the firm, to sell all the partnership effects, and convert them into money; but at the same time we perceive no reason why one of the surviving partners could not purchase from the executors,—the personal representatives of the deceased. They had the power to sell any and all personal assets belonging to the estate, and when the surviv-

ing partner was willing to buy, we know of no principle which would forbid a sale. Both parties were capable in law of contracting, the surviving partner acting for himself and the executors acting for the estate; and in making the purchase the surviving partner was not dealing with trust property in that sense which is prohibited by law.

The decision of the Appellate Court will be affirmed.

*Decree affirmed.*