F. J. ANDREWS *et al.* Exrs. Defendants in Error, *vs.* A. J. STINSON, Plaintiff in Error.

*Opinion filed April 18, 1912.*

1. PARTNERSHIP—*death of partner works dissolution of partnership.* The death of either partner is, *ipso facto,* a dissolution of the partnership from the time of the death.

2. SAME—*duty of surviving partners is to settle the partnership business.* Surviving partners become trustees as to the deceased partner's interest and must proceed at once to settle up the partnership business, and while there is a community of interest between them and the representatives of the deceased partner in the adjustment of the partnership affairs, the partnership has only a limited continuance for that purpose.

3. SAME—*surviving partners continuing business without authority do so at their peril.* Surviving partners continuing business without authority do so at their peril, as their duty, under the law, is to wind up and close out the business, and they have no lawful right to expend the money of the firm in new enterprises or to make large purchases of stock for the purpose of continuing the business.

4. SAME—*effect where business is carried on by authority of partnership articles or deceased partner's will.* Where a partnership is continued, after the death of one partner, under authority of the co-partnership articles or under the deceased partner's will, with the consent of his executors, there is, in effect and in law, a new partnership, of which the executors and the surviving partners are the members.

5. SAME—*executors may adjust affairs of the partnership with surviving partners.* The personal representatives of a deceased partner may adjust the affairs of the partnership with the surviving partners, and, in the absence of fraud or mistake, the settle-

ment is conclusive upon the parties and all persons who claim through them.

6. SAME—*what does not prevent executors from being partners with surviving partners.* The fact that the executors, under their agreement with the surviving partners, have no active management of the business does not prevent them from being partners, where the deceased partner, under the original partnership agreement, was to give only such time and attention to the business as he desired, leaving the active management of the business to the other partners.

7. SAME—*sections 87 to 90 of Administration act do not exclude jurisdiction of court of equity.* Sections 87 to 90 of the Administration act, relative to the duties of surviving partners and the power of the county court over them, are practically cumulative and do not provide new remedies with reference to the closing up of the estate, nor are the remedies given exclusive of ordinary jurisdiction of a court of equity.

8. SAME—*power of county court under sections 87 to 90 of the Administration act.* Sections 87 to 90 of the Administration act merely authorize the county court, where the estate of the deceased partner is being administered, to require an accounting from the surviving partners and to preserve the property until such accounting is had, and such sections afford no remedies to and confer no rights upon anyone except the personal representatives or heirs of the deceased partner.

9. SAME—*when county court cannot compel surviving partners to make a further accounting.* The county or probate court has power, under sections 87 to 90 of the Administration act, to require the surviving partners of the original partnership to make an accounting, but if they show that they have fully settled with the deceased partner's executors and formed a new partnership with them under the authority of the deceased partner's will, the court cannot compel them to make a further accounting unless it appears there was fraud or mistake in such settlement.

10. PLEADING—*character of pleas under section 89 of Administration act.* The proceeding, under section 89 of the Administration act, for a citation against surviving partners to compel them to make an accounting is of a summary character, and the pleadings should be more in the nature of pleadings in chancery than at common law, although they need not follow strictly the forms of either class.

11. SAME—*when a plea to petition for citation is, in effect, a plea of account stated.* A plea by surviving partners to a petition by the executors of the deceased partner for a citation to compel them to account to the county court, which shows that the original

partnership was fully settled between the surviving partners and the executors and that a new partnership was formed between them and the property of the old partnership turned over to the new one, amounts to a plea of stated account in equity, and is a bar to relief unless fraud or mistake is shown.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Logan county; the Hon T. M. HARRIS, Judge, presiding.

In this case the executors of the last will of Baker P. Andrews, deceased, formerly a resident of Logan county, Illinois, filed a petition in the county court of that county for a citation against A. J. Stinson and Nelson T. Hand, as surviving partners of said Andrews, to cause them to come into that court and make a settlement of the partnership affairs. A demurrer filed to the original petition was sustained and leave given to file an amended petition. To this amended petition the plaintiff in error, Stinson, filed a verified plea. To this plea the defendants in error, the executors, demurred. The county court overruled the demurrer and dismissed the amended petition for want of jurisdiction. From this judgment the defendants in error appealed to the circuit court of Logan county and there again urged the demurrer to the plea, where it was sustained and an order entered that the plaintiff in error should answer the amended petition instanter. Plaintiff in error, Stinson, excepted to such ruling and elected to stand by his plea. Thereupon the circuit court entered judgment on the demurrer for costs and ordered citation to issue as prayed. From this order an appeal was prayed to the Appellate Court for the Third District, where the judgment of the circuit court was sustained. The cause has been brought here by writ of *certiorari.*

The original petition filed in the county court of Logan county alleged, among other things, that on January 2, 1905,

Baker P. Andrews, of Lincoln, in said Logan county, and Archibald J. Stinson and Nelson T. Hand, of Chicago, entered into a partnership agreement to carry on the lumber business at Summerdale, in Chicago, (which had already been carried on by them for some time,) for three years, under the name of Stinson & Hand. The petition set out in full the partnership agreement. The main provisions necessary to be considered here in reaching a conclusion are as follows:

"The capital of this new firm shall be $80,000, of which sum said Andrews furnishes one-half,—that is to say, $40,-000,—and the said Stinson and Hand each furnishes one-fourth,—that is to say, $20,000 each. * * * Each of the parties hereto may at the end of each calendar month draw from the fund of said firm the sum of $200 for his own individual use. * * * It is expected and hereby agreed that said Stinson and Hand are to attend to and manage the details of said business and devote all their time and attention thereto, but the said Andrews shall only devote so much of his own time and attention thereto as in his judgment are for the best interest in said business; and the said Stinson and Hand shall also, as they have hitherto done, keep or have kept accurate books of account showing at all times the true condition of said business, and shall also submit each month, as they have hitherto done, to said Andrews, a statement showing, in detail, the then condition of said business substantially in the manner heretofore used. Should any of the parties to this article die while it is in force, the survivor or survivors shall have one full year from date of such death to close up and settle the co-partnership business, and no longer."

Under this agreement the firm proceeded to do a lumber business and conduct a lumber yard at Summerdale, the land being in Andrews' name under a declaration of trust.

The petition further alleged that on July 22, 1906, Baker P. Andrews died testate, appointing defendants in

error his executors; that said executors learned soon there-
after that Stinson and Hand, a short time before Andrews'
death, had purchased and taken title to a tract of 960 acres
of land in Alabama, taking the purchase money from the
assets of said firm; that said executors refused to have
anything to do with said land or to consider it a part of
the partnership enterprise, and thereupon Stinson and Hand
formed a co-partnership between themselves for the manu-
facture of lumber taken from the said land; that said An-
drews' will provided that the partnership business might
be carried on, in the discretion of the executors, after his
death, provided it was showing a profit of six per cent;
that after the business had been carried on until August 9,
1907, and no settlement had been made by Stinson and
Hand, the executors on that date entered into an extension
contract with said surviving partners. This is set out in
full in the petition. After reciting the making of the part-
nership agreement, death of Andrews, probate of will and
appointment of executors, it provides: "Now, therefore,
in consideration of the premises and the mutual benefits to
accrue to the said surviving partners and the estate of said
deceased partner, it is hereby agreed that the said agree-
ment of January 2, 1905, by reason of the death of the
said Baker P. Andrews, as aforesaid, may continue in ef-
fect until January 15, 1908, at which time the said part-
nership is to be settled and closed, as provided in the said
agreement of January 2, 1905. It is not intended, how-
ever, hereby to alter, modify or change in any way, other
than by the extension above set forth, any of the provisions
of said agreement of January 2, 1905."

The petition further stated that said business was car-
ried on under the original and supplemental contracts until
March 12, 1908, when Stinson and Hand and the executors
entered into another contract in relation to said business.
Said contract, after reciting much of the substance of the
two former agreements, stated that it had become imprac-

ticable and not for the best interests of all the parties to settle the partnership as provided in the extension agreement of August 9, 1907. The parts of the new agreement required for an understanding of the facts here are as follows:

"And it appearing from a statement rendered by the said Stinson and Hand in relation to said business, that the interests of the said estate of Baker P. Andrews, arising from the money so invested in said business and from the profits thereon, amounted to $54,115.66 on the 31st day of January, 1908, at which time said Stinson and Hand rendered an account to the said executors, and that the interest of said Nelson T. Hand in said business, arising from said capital so invested and the profits arising therefrom, amounted to $26,589.14, and that the interest of the said A. J. Stinson amounted to $23,968.57, arising from said investment in said business and the profits thereto: Now, therefore, it is hereby agreed by and between the parties that in order to equalize the capital stock, as near as it may be under said original agreement, and that each of the said parties may participate in the profit equally as contemplated by the original agreement, and that each of said parties hereby mutually agree that the capital stock of said co-partnership shall be $95,874.28,—that is to say, the capital invested heretofore and the profits arising from the said business,—the interest of said Baker P. Andrews is at the present time $47,937.14, and the capital invested by Nelson T. Hand, and the profits arising therefrom, is $23,968.57, and the capital remaining invested by said A. J. Stinson is $23,968.57. And it is further agreed that the said firm of Stinson & Hand shall give to the executors of the estate of the said Baker P. Andrews a note for the sum of $6178.52 and a note to the said Nelson T. Hand for the sum of $2620.57, * * * and that said notes are given for the purpose of equalizing the respective interests of each of the said partners in said business. And it is further agreed by

and between the parties that the statement rendered by the said Stinson and Hand of the business of said firm January 31, 1908, shows that there is now due said firm on account of land shown on the books and known as southern land, near Citranel, Alabama, the sum of $9637.09, and that the purchase of said land and the manufacture of lumber from the timber thereon was outside the business contemplated by the said contract of co-partnership, and the said A. J. Stinson and Nelson T. Hand hereby assume and agree to pay and guarantee to the said firm of Stinson & Hand the said sum of $9637.09 and interest at six per cent from January 21, 1908, and the said A. J. Stinson and the said Nelson T. Hand hereby agree, on their part, to convert all the assets in connection with said land, including said land, if necessary, and all lumber, timber, and all mules, wagons or other property purchased in relation to the same, into cash as soon as possible. * * * And it is further provided in this agreement that the said Stinson and Hand shall devote all their time and attention to the said business, and that they shall render to the said executors of the estate of Baker P. Andrews a true and correct statement of each month's business at the end of each month. * * * And it is further agreed by and between the parties, that on the last day of each month during which time this contract is in force, the said A. J. Stinson, Nelson T. Hand and the executors of the estate of Baker P. Andrews shall each draw the sum of $250 per month, commencing on the 31st day of March, 1908, * * * from the profits of said business, and is to be in full compensation and satisfaction of all claims and demands of each of said parties for services in conducting or in any manner carrying on said business; and at the end of said year, to-wit, January 31, 1909, when the profits or losses arising from said business is ascertained, if said business shows a profit in excess of the said $250 per month that is to be paid to ea of said parties, the said profits shall be distributed to e

of said partners in equal parts, and if said business should show a loss, then each of said parties hereby agrees to pay one-third of said loss, it being understood and contemplated by this contract that the said A. J. Stinson and the said Nelson T. Hand and the said executors of the estate of Baker P. Andrews are each entitled to an equal one-third of the profits and each to share one-third of the loss, if any."

The petition further set out that Stinson and Hand continued to conduct said business, appropriating large sums of money for their own use; that on March 1, 1909, the executors learned that a large amount of lumber had been purchased by Stinson and Hand for the purpose of manufacturing lumber at the Summerdale yard, and that they had incurred an indebtedness to the extent of $100,000; that upon learning of this, said executors agreed with Stinson and Hand that the orders for the lumber that had not been received should be canceled, the stock of lumber on hand sold and the business disposed of, and that W. A. Irvine be put in charge of said yard and business at Summerdale; that in pursuance of said agreement said Irvine took charge of said business, assisted by said Stinson and Hand; that an invoice of the stock was taken on June 12, 1909, the petition setting out the accounts receivable and the liabilities and stating the interests of the estate of Andrews and of Hand and Stinson. The petition further stated that since the invoice a large amount of lumber and other property had been sold and converted into cash accounts and some of the liabilities paid; that at the time the petition was filed there were liabilities amounting to about $30,000, and merchandise, consisting of lumber, etc., valued at about $16,000, and some buildings and machinery; that the executors have been unable to settle with Stinson and Hand; that the latter have not filed in the county court any account whatever of their doings as surviving partners, except the invoice filed at the time of Andrews' death. The petition prayed that Stinson and Hand be cited to appear

and answer, and that upon a final hearing they be ordered to make a full settlement of the partnership; that Stinson be required to turn over $3377 which he collected August 13, 1909, and applied to his own use; that he be required to give an account and pay over to the executors the sum found due after the payment of partnership debts, and that in default thereof, or in giving security in a sum fixed by the court for the faithful settlement of the partnership, the court appoint a receiver.

The amended petition set out in substance most of the details of the original petition, except it omitted entirely the agreements of August 9, 1907, and March 12, 1908, entered into by the executors with Stinson and Hand, and also omitted to state the provisions of Andrews' will with reference to the executors continuing the business, and omitted entirely any agreement by said executors as to carrying on the business, but referred to said verbal agreement of 1909 that the business should be wound up and the property disposed of. The prayer of the amended petition as to requiring Stinson and Hand to answer and settle the partnership accounts was substantially as in the original petition.

To the amended petition Stinson filed a plea, setting out, among other things, the original articles of co-partnership between the said Baker P. Andrews, Stinson and Hand; also the provisions of the will as to the executors having power to continue the business, and also giving in full the agreement of August 9, 1907, between Stinson, Hand and the executors, alleging that under the power granted by the will the executors had entered into such agreement. The plea also alleged that on March 12, 1908, a new contract of partnership was entered into between the executors and Stinson and Hand, and set out said contract in full. The plea further alleged that by the power given in the will to the executors, and by the said agreements, a new partnership was created by and between the executors

and the said Stinson and Hand, and that by said new contract the old partnership was merged into the new one, and that for some time after the making of the new agreement said lumber business was carried on, the settlement of which new partnership was sought in this proceeding, as more fully appeared from the original petition, which petition, by reference, was made a part of the plea; and the defendant averred that the county court of Logan county had no jurisdiction to settle said co-partnership, but that the circuit court of Cook county, Illinois, had full and complete jurisdiction to settle said new partnership and grant the proper relief in the premises. The plea then concluded demanding judgment and praying that Stinson be dismissed with reasonable costs.

WELTY, STERLING & WHITMORE, (ADAMS, BOBB & ADAMS, of counsel,) for plaintiff in error:

County courts, being of statutory creation, have only such jurisdiction as is conferred by statute. They do not possess general chancery powers. Whatever of chancery powers are conferred on county courts in any case are concurrent, only, and not exclusive. *Breckenridge* v. *Ostrom,* 79 Ill. 71.

The death of Baker P. Andrews *ipso facto* terminated the partnership. *Douthart* v. *Logan,* 190 Ill. 255; *Remick* v. *Emig,* 42 id. 342.

It became the duty, under the statute, of the surviving partners to proceed at once to settle the partnership estate upon the death of the deceased partner. *Douthart* v. *Logan,* 190 Ill. 255.

Where the personal representatives of a deceased partner join with the surviving partners in carrying on the business, it is not a continuation of the old partnership but the creation of a new one. 30 Cyc. 637; *Insley* v. *Shire,* 54 Kan. 793; *Bank* v. *Tracy,* 77 Mo. 594; *McGrath* v. *Cowan,* 57 Ohio St. 385; *Stinson* v. *Stevens,* 7 N. H. 352

Agreements, by articles of co-partnership, for the continuation of business after the death of a partner, which in law operates as a dissolution as to all, are to be looked upon as bargains for the creation of a new partnership when the old one ceases to exist, since the partner who has died cannot possibly continue a member of the firm, and though his executor or children became members, yet it cannot be the same firm as that of which he was a member. 1 Woerner on Administration, (2d ed.) 281.

The personal representative of the deceased partner may in good faith settle the affairs of the firm with the survivor, and such settlement is conclusive. *Sternberg* v. *Larkin,* 58 Kan. 201; *Sage* v. *Woodin,* 66 N. Y. 578.

CRAIG & KINZEL, and LAWRENCE B. STRINGER, for defendants in error:

The surviving partners having filed their inventory as required by the statute and having submitted to the jurisdiction of the county court, and the county court, in this case, having obtained jurisdiction by the filing of the petition of the executors and the service of the rule upon the defendants to answer, acquired jurisdiction of the subject matter and persons, and retained such jurisdiction until the final settlement of any transaction pertaining to the partnership. *Maynard* v. *Richards,* 166 Ill. 466; *Nelson* v. *Hayner,* 66 id. 487; *Oliver* v. *Forrester,* 96 id. 315; *Diversey* v. *Johnson,* 93 id. 547; *Kimball* v. *Lincoln,* 99 id. 587; *Mack* v. *Woodruff,* 87 id. 574.

The jurisdiction of the county court cannot be affected by any agreement between the surviving partners and the executors of the estate of the deceased partner looking to the final settlement of the partnership affairs. *Maynard* v. *Richards,* 166 Ill. 466; *Nelson* v. *Hayner,* 66 id. 487; *Galbraith* v. *Tracy,* 153 id. 54; *Oliver* v. *Forrester,* 96 id. 315; *Field* v. *Crawford,* 146 id. 136; *Furber* v. *Page,* 143 id. 622.

Directions in a deceased partner's will to continue a partnership does not constitute a contract. The surviving partners are not required to assent to it, and may stand on their legal rights and insist upon a dissolution. Hence, in order to make the direction binding upon them, their assent is required. *Davis* v. *Christian,* 15 Gratt. 11; *Bank* v. *Tracy,* 77 Mo. 594; *Wilson* v. *Simpson,* 89 N. Y. 619; *Downs* v. *Collins,* 6 Hare, 418; *Burwell* v. *Cawood,* 11 U. S. 574.

A provision in a partner's will that his death shall not terminate the partnership, when assented to by the survivors, becomes effective, and the firm is not dissolved by the testator's death. 30 Cyc. 654, note 85.

In all cases relating to the existence of a partnership, the courts will strive to construe the provisions of the contract so as to effectuate the honest intention of the parties as shown by the language of the contract and their conduct under it. 30 Cyc. 363; *Surety Co.* v. *Brick Co.* 176 Ill. 156.

Even though the agreement does, in effect, create a new partnership, this does not divest the county court of jurisdiction, as the county court once having acquired jurisdiction retains it as long as there are any assets of the estate, and the distributees have the right at any time to petition the county court to protect their interests as against executors using the funds of the estate in a new partnership. Executors and surviving partners cannot, by agreement or stipulation, divest the county court of jurisdiction already acquired. *Freeland* v. *Dazey,* 25 Ill. 266; *Winslow* v. *Leland,* 128 id. 343; *Heustis* v. *Johnson,* 84 id. 61; *Shepard* v. *Speer,* 140 id. 245; *Goodman* v. *Kopperl,* 169 id. 138; *Mack* v. *Woodruff,* 87 id. 570.

The statutory proceeding in the county court is designed to give a cheap and speedy mode of stating an account without compelling the administrator to resort to a

bill in equity, and it must have been the purpose of the General Assembly to give it all of the incidents and to govern it by the same principles as a proceeding in equity. *Mack* v. *Woodruff,* 87 Ill. 574; *Kennaday* v. *Sinnott,* 179 U. S. 616; *Maynard* v. *Richards,* 166 Ill. 486; *People* v. *Morrow,* 181 id. 319; *In re Steele,* 65 id. 323; *Weir* v. *Mowe,* 182 id. 449; *Clark* v. *Burke,* 163 id. 334.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The principal point discussed in the briefs is whether the two contracts executed by said executors and the surviving partners, Hand and Stinson, (in connection with the authority granted in Andrews' will,) constituted a continuation of the old or the creation of a new partnership. The death of either partner is, *ipso facto,* from the time of the death a dissolution of the partnership. (*Remick* v. *Emig,* 42 Ill. 343; *Nelson* v. *Hayner,* 66 id. 487; *Douthart* v. *Logan,* 190 id. 243.) And this is the general rule in other jurisdictions. (22 Am. & Eng. Ency. of Law,—2d ed.— 199, and cases cited; 30 Cyc. 620, and cases cited.) It is sometimes said that a stipulation in the articles of partnership providing for its continuation after the death of the partner is binding upon the heirs or representatives of the deceased partner. Such agreements may be binding upon the surviving partners, (22 Am. & Eng. Ency. of Law,— 2d ed.—202,) but it is at the option of the representatives, and if they do not consent, the death of the party puts an end to the partnership. (3 Kent's Com.—14th ed.—57, and note; *Buckingham* v. *Morrison,* 136 Ill. 437.) The surviving partners, on the dissolution of the firm by the death of one of the members, are charged with the duty of proceeding at once to settle up the partnership estate. They become trustees as to the deceased partner's interest, and while there is a community of interest between themselves and the representatives of the deceased partner in the ad-

justment of the partnership affairs, the partnership, for that purpose, only has a limited continuance. (*Nelson* v. *Hayner, supra; Douthart* v. *Logan, supra.*) If they continue business they do it at their own peril. They have no lawful right to expend the money of the firm in new enterprises, however necessary the expenditure may be to the conduct of the business. (*Remick* v. *Emig, supra.*) While a surviving partner in mercantile business may make small purchases of material to render the stock more salable, he has no power to make large purchases intended to continue the business. (*Oliver* v. *Forrester,* 96 Ill. 315.) The surviving partners, under the law, are required to wind up and close out the business, and, after paying the firm debts, to distribute the assets among the surviving partners and the representatives of the deceased partner. 1 Woerner's Am. Law of Administration, (2d ed.) sec. 124; 22 Am. & Eng. Ency. of Law, (2d ed.) 200; 30 Cyc. 636.

Where there are provisions in the articles of agreement or will for the continuance of the business after the death of one of the partners, it is sometimes inaccurately said that the death of the partner does not dissolve the partnership. If the business is carried on after the death of the partner under such arrangement or by the agreement of the heirs or personal representatives of the deceased, there is, in effect and in law, a new partnership, of which the survivors and the executors or heirs are the members, the new members becoming liable, as the old, to the creditors of the firm. (22 Am. & Eng. Ency. of Law,—2d ed.—201, and cases cited; 1 Woerner's Am. Law. of Administration,—2d ed.—sec. 123; *Exchange Bank* v. *Tracy,* 77 Mo. 594; *McGrath* v. *Cowen,* 57 Ohio St. 385; *Madison* v. *Farnham,* 44 Minn. 95; Jones & Cunningham's Pr.— 2d ed.—82; Parsons on Partnership,—3d ed.—*439. See, also, 1 Bates on Partnership, sec. 52; *Owens* v. *Mackall,* 33 Md. 382.) A reference to the authorities will disclose that while the above rule of law is not followed in some

jurisdictions, the weight of authority, as well as sound reason, is in accord therewith. Under this reasoning it must be held that the agreements entered into by the executors and surviving partners created a new partnership.

It is insisted by counsel for defendants in error that the executors had nothing to do with carrying on or conducting the business under either of these agreements, and therefore they cannot be held to be partners. Nothing is said in either agreement to that effect. Under the original partnership agreement Stinson and Hand were to attend to all the details of the business and Baker P. Andrews was to give only such time and attention as he desired. The first extension agreement distinctly provided that the only modification was to extend the agreement until January 15, 1908, "without in any way altering, changing or modifying any of the other terms or provisions thereof." Under the agreement executed by the executors and surviving partners on March 12, 1908, there was a provision that each party should draw out from the profits of the business $250 a month, the executors of the estate of Baker P. Andrews being considered as one of the parties, and this was stated to be in full compensation for all claims for services in conducting or in any manner carrying on the said business. Monthly reports were to be made to them, as formerly. Except as changed and modified by the last mentioned agreement as to the proportionate interests of the parties, manifestly the executors, as representatives of the estate, had as much power and control over the business under the agreement of August 9, 1907, and that of March 12, 1908, as did Baker P. Andrews in his lifetime. Furthermore, it must be held that said agreement of March 12, 1908, is a full settlement and accounting of the affairs of the old firm, such settlement being conclusive upon the executors. The personal representatives of a deceased member of a firm may adjust the affairs of a partnership with the surviving partners, and in the absence of fraud or mis-

take the settlement is conclusive upon the parties and all persons claiming through them. *Sage* v. *Woodin,* 66 N. Y. 578; *Kimball* v. *Lincoln,* 99 Ill. 578; 2 Lindley on Partnership, (Ewell's ed.) *1069; *Holliday* v. *Land and River Improvement Co.* 57 Fed. Rep. 774; *Sternberg* v. *Larkin,* 58 Kan. 201.

Under this condition of affairs, could the county court of Logan county, under sections 87 to 90 of the Administration act, (Hurd's Stat. 1909, pp. 127, 128,) compel the surviving partners of the old firm to comply with the prayer of the amended petition of the executors? Sections 87 and 88 provide that the surviving partner or partners shall, within sixty days after the death of the partner, file a full, true and complete inventory of the estate of the co-partnership, and also a complete list of the liabilities at the time of the death of the deceased partner. This, according to the pleadings, was done by the surviving partners. Section 89 provides that the surviving partners shall continue in possession of the effects of the partnership and proceed to settle its business. Section 90 provides that upon the committal of waste by the surviving partner or partners, the court may, upon proper application, protect the estate by citing the surviving partner or partners and require them to give security, and, if necessary, appoint a receiver for the property. It has been held by this court that these sections of the statute are practically cumulative and do not provide new remedies with reference to the closing up of the estate, (*Nelson* v. *Hayner, supra,*) and that such remedies are not exclusive of the ordinary jurisdiction of a court of equity. (*Breckenridge* v. *Ostrom,* 79 Ill. 71.) Under a fair construction we think these provisions of the statute simply authorize the county court to require an accounting and to preserve the property until such an accounting is had. While the county court has general equity powers to compel the accounting, these sections of the statute afford no remedy and confer no rights

upon anyone except the executors, administrators or heirs of the deceased members of the firm. Undoubtedly, a county (or probate) court has the authority, under these sections, to require the surviving partners of an original partnership to make an accounting, but if they show that they have settled with the executors of a deceased partner's estate, said county court cannot compel them to make a further accounting to that court unless it appears there was fraud or mistake in such account and settlement.

The plea of plaintiff in error to the amended petition is considered and treated in the briefs of both parties as if it were a plea in abatement at common law. This proceeding is statutory and of a summary character. The pleadings should be more in the nature of pleadings in chancery than at common law but need not follow strictly the forms of either. This plea, while perhaps subject to some criticism as to arrangement and wording, shows with sufficient clearness and certainty that the said two contracts entered into between the executors and the surviving partners created a new partnership between said executors and said surviving partners, and that the contract of March 12, 1908, was a settlement and adjustment of the old partnership accounts. The plea, in effect, amounted to a plea of a stated account in equity. The demurrer of defendants in error admitted the truth of the allegations set out therein. The plea, therefore, precluded the petitioners from obtaining the relief prayed for in the said amended petition. It showed that there had been a settlement and that the property of the old partnership had been turned over to the new partnership.

The judgment of the Appellate Court and the decree of the circuit court must be reversed and the cause remanded to the circuit court, with directions to that court to overrule defendants in error's demurrer to the plea and for further proceedings in harmony with the views herein expressed.          *Reversed and remanded, with directions.*