### WOODWARD v. UNITED STATES.
#### No. 49366.

United States Court of Claims.
Jan. 13, 1953.

Richmond D. Thomason, Chicago, Ill., for plaintiff. Wilton H. Wallace, Washington, D. C., was on the brief.

H. S. Fessenden, Washington, D. C., with whom was Acting Asst. Atty. Gen. Ellis N. Slack, for defendant. Andrew D. Sharpe and Elizabeth B. Davis, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

In this case the plaintiff, as administrator of the estate of James Hugh Oliver, seeks to recover an admitted overpayment of income tax by the plaintiff for the year 1943 in the amount of $28,167.21, together with interest thereon as provided by law less the amount of $6,628.35 paid in September 1948 on said overpayment. James Hugh Oliver filed a tax return for 1943 and, as shown in finding 4, paid the total tax due thereon in the amount of $28,167.21. James Hugh Oliver was in the military service of the United States and was killed in action on June 14, 1944. Theretofore, on January 2, 1942, Grinnell F. Oliver and James Hugh Oliver, the decedent in this proceeding, formed a partnership under the name of Oliver Machine Tool Co., in which each of the partners had a one-half interest. This partnership continued until the date of decedent's death on June 14, 1944. The partnership was terminated on the death of James Hugh Oliver. Andrews v. Stinson, 254 Ill. 111, 123–124, 98 N.E. 222. No new partnership was formed between Grinnell F. Oliver and the estate of James Hugh Oliver after June 14, 1944.

On July 27, 1944, Grinnell F. Oliver was appointed executor of the estate of James Hugh Oliver. On May 28, 1945, the executor resigned and his final report and account as executor of the estate was approved. On May 31, 1945, John S. Woodward was duly appointed administrator with the will annexed of the estate of James Hugh Oliver, and such letters of administration are still in full force and effect. On September 22, 1947, Woodward, as administrator, filed a claim for refund of the tax paid by James Hugh Oliver for 1943 under § 421, U.S.Code, Title 26, amended by the Act of August 5, 1947, 61 Stat. 778. This claim was allowed by the Commissioner of Internal Revenue and an overpayment of $28,167.21 was determined and allowed. The total overpayment plus $18.73 of the interest allowed thereon was not paid but was withheld and set off by the Comptroller General against an alleged indebtedness to the United States in the amount of $28,185.94, under a renegotiation agreement concerning excessive profits of the Oliver Machine Tool Co. for the calendar year 1944, signed by Grinnell F. Oliver, individually, and Grinnell F. Oliver as administrator of the estate of James Hugh Oliver. See findings 9–13. As hereinbefore stated, Grinnell F. Oliver was not executor or administrator of the estate of James Hugh Oliver on June 13, 1946, or when said renegotiation agreement was executed by him and the Navy Department, effective June 24, 1946, as shown in finding 12. The Comptroller Gen-

eral of the United States set off the entire amount of the overpayment plus interest of $18.73, totaling $28,185.94 (finding 14), under and pursuant to the agreement between Grinnell F. Oliver and the Navy Department, and issued a certificate of such settlement in the name of John S. Woodward, as administrator of the estate of James Hugh Oliver.

■ The plaintiff sues to recover the admitted overpayment of tax plus interest. The Government argues that the amount of $28,185.94 alleged to be due the United States under the renegotiation agreement, set forth in finding 12, was a proper offset against the tax overpayment. This was a set off of a separate and distinct indebtedness alleged to be due the United States and not an offset or credit arising out of the same transaction as the term "offsets and credits," as used in the statute relating to suits in the Court of Claims. The burden is, therefore, upon the defendant to establish that the set off made by the Comptroller General against the overpayment of tax and interest admittedly due from the United States, was proper and legal. The defendant has not sustained this burden.

■ The indebtedness alleged to be due the United States which the Comptroller General set off against the overpayment of tax was founded entirely upon the agreement between Grinnell F. Oliver and the Navy Department. In the execution of that agreement, Grinnell F. Oliver was without authority to bind the estate of James Hugh Oliver as to the amount of excessive profits or to bind the estate to pay this alleged indebtedness. No partnership arrangement had existed between Grinnell F. Oliver and the estate of James Hugh Oliver since June 14, 1944, and Grinnell F. Oliver was neither the executor nor administrator of the estate at the time of the conferences and negotiations between him and the Navy Department in August 1945, finding 9, or at the time the renegotiation agreement was signed by Grinnell F. Oliver, on June 13, 1946. We, therefore, hold that the offset made by the Comptroller General against the plaintiff under purported agreement between Grinnell F. Oliver and the Navy Department was improper and illegal.

Counsel for the defendant argues that even if the set off made by the Comptroller General was not proper under the alleged renegotiation agreement, it should be allowed to stand under the inherent power of the Government to offset an indebtedness due from it against an indebtedness due to it because the Secretary of the Navy could have made a unilateral determination of excessive profits due the United States under its contract with the Oliver Machine Tool Co. The difficulty with this argument is that no such determination was made, and if such determination had been made other considerations as to the extent, if any, of the liability of the estate of James Hugh Oliver would have been involved and such liability and the correctness of the determination could have been litigated by the estate in the proper tribunal.

The plaintiff is entitled to recover $28,167.21, together with interest thereon as provided by law from the dates shown in finding 4, less the amount of $6,628.35 paid, as shown in finding 6. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.

### Findings of Fact

The court makes findings of fact, based upon the evidence, the report of Commissioner Richard H. Akers, and the briefs and argument of counsel, as follows:

1. James Hugh Oliver, hereinafter sometimes referred to as the "decedent," was killed on June 14, 1944, in the European area while in the active military service of the United States. At the time of his death he was a resident of Glen Ellyn, DuPage County, Illinois, and his surviving heirs at law and next of kin were Grinnell F. Oliver, his father; Georgette T. Oliver, his mother; and Rani Joan Oliver, his sister.

2. On July 27, 1944, Grinnell F. Oliver was appointed executor of the estate of James Hugh Oliver, deceased. That ap-

pointment remained in full force and effect to and including May 28, 1945, on which day his resignation and final account and report as executor of the estate was approved. On May 31, 1945, the plaintiff, John S. Woodward, was appointed administrator with the will annexed of the estate of James Hugh Oliver, deceased, and such letters of administration are still in full force and effect.

3. James Hugh Oliver became a member of the military forces of the United States in May 1943 and continued in such capacity until his death on June 14, 1944, as shown in finding 1.

4. On March 15, 1944, James Hugh Oliver filed his individual income tax return for the calendar year 1943, reporting thereon as his sole source of income his share of partnership income from the Oliver Machine Tool Co. in the amount of $18,820.08. The tax liability reported on that return of $29,559.35, which sum included the unforgiven part of his tax for the year 1942, was paid and abated as follows:

| | |
|---|---|
| March 15, 1943 | $2,731.03 |
| June 15, 1943 | 2,830.95 |
| September 15, 1943 | 7,240.22 |
| December 15, 1943 | 7,240.22 |
| March 15, 1944 | 8,113.95 |
| Total | 28,156.37 |
| ITA 124268 abated | 1,402.98 |
| Total | 29,559.35 |

The additional amount of tax withheld from Army compensation for the period February 20, 1943 to April 30, 1943, as certified by Fairfield Air Depot, Patterson Field, Fairfield, Ohio, was................ 10.84

5. On September 22, 1947, after the passage of the Act of August 5, 1947, 61 Stat. 778, amending § 421 of the Internal Revenue Code, 26 U.S.C. § 421, John S. Woodward, as administrator with the will annexed of the estate of James Hugh Oliver, deceased, filed a claim for refund for 1943 and stated as grounds therefor:

"Pursuant to Section 421 as amended, his estate is entitled to a refund of all of the decedent's Federal Income Taxes paid in connection with the year 1943. Claim is also expressly made for any portion of the 1942 Federal Income Taxes which were added to and made a part of the 1943 Federal Income Taxes."

6. On or about September 22, 1948, the Commissioner of Internal Revenue allowed the claim for refund referred to in finding 5 and listed the overassessment on schedule IT–137647 dated September 22, 1948. The overassessment allowed was in the amount of the total tax paid, namely, $28,167.21. In October 1948 the Commissioner sent to the plaintiff a notice of refund which read in part as follows:

"Total Amount Paid...... $28,167.21
Correct Tax Liability.... none

Overpaid (Refundable)... $28,167.21

"Refund is due for the following reasons:

"This Notice of Refund is issued to effect recovery of income taxes under the provisions of Section 421 of the Internal Revenue Code, as amended by Public Law 367 (HR–479) 80th Congress. All tax payments made for year 1942 are considered as tax payments for the year 1943 under the provisions of Section 6(F) of the Current Tax Payment Act of 1943 [26 U.S.C.A. § 1622 note].

"Note.—Payment of the amount shown hereon ($28,167.21 plus $18.73) has been withheld, and the total amount has been scheduled to the Comptroller General for settlement of a debt to the Navy Department. You will be further advised relative to the balance of the interest allowable on the overpayment."

At or about the same time that the notice of refund was sent to the plaintiff, the Commissioner also sent to the plaintiff a notice of interest allowance which read in part as follows:

"Reference is made to an overassessment of income taxes allowed for the

year ended December 31, 1943, such overassessment having been listed on Schedule IT–137647, dated September 22, 1948, and adjusted by the refund of $28,167.21.

"Interest in the amount of $6,628.35 has been allowed on the refund or credit referred to, at the rate of six per cent per annum, from the date or dates of overpayment, in accordance with the provisions of Section 3771 of the Internal Revenue Code, 26 U.S.C. § 3771.

| | |
|---|---|
| Interest allowed on refund.. | $6,647.08 |
| Interest paid on Direct Settlement ................. | 18.73 |
| Net interest payable ...... | 6,628.35" |

Enclosed with the notice of interest allowance was a Treasury check for the net interest shown payable, $6,628.35.

7. On October 21, 1948, the plaintiff protested the action of the defendant in withholding the amount of the overpayment in the amount of $28,167.21 plus interest and its application to an alleged debt due to the defendant. In the same letter the plaintiff asked that he be advised "how the obligation purporting to bind the estate of James Hugh Oliver, Deceased, arose, when it arose, and by whose authority it was created." In reply to that inquiry the Commissioner advised the plaintiff December 8, 1948, in part as follows:

"The amount of $28,185.94 was withheld at the direction of the Navy Department to cover the renegotiation indebtedness of Grinnell F. Oliver and Grinnell F. Oliver as administrator of the Estate of James Hugh Oliver, formerly doing business as Oliver Machine Tool Company, Downers Grove, Illinois, under Contract #NOd–6839. If further information is desired relative to the indebtedness your letter should be addressed to the U. S. Navy Central Disbursing Office, 1608 Arlington Annex, Washington 25, D. C., referring to symbols L6–2 (NOd–6839) (D–2) X23.

"The amount withheld was scheduled to the Comptroller General under authority contained in Section 305 of the Budget and Accounting Act of 1921 (31 U.S.C.A. § 71), which provides that all claims by or against the government of the United States shall be settled by the General Accounting Office.

"The allowance was made under the provisions of Section 421 of the Internal Revenue Code as amended by Public Law 367 (HR 479) 80th Congress forgiving the tax liability between certain dates of service personnel dying while in active service, but the relief provisions do not include the cancellation of renegotiation indebtedness. Since partners are jointly and severally liable for obligations of a partnership, and the Navy Department requested the withholding, the allowance was forwarded to the Comptroller General for adjustment as previously stated and this office has no further jurisdiction in the matter."

The circumstances under which the "indebtedness" referred to in the above communication arose are shown from the findings which follow.

8. On January 2, 1942, Grinnell F. Oliver and James Hugh Oliver, the decedent in this proceeding, formed a partnership under the name of Oliver Machine Tool Co. with each of the individuals having a one-half interest therein, and that relationship had continued up to the date of decedent's death on June 14, 1944. The partnership immediately obtained Government contracts and thereafter engaged primarily in manufacturing war material during its existence. The partnership terminated June 14, 1946, on the death of James Hugh Oliver. However, during the period June 14, 1944, to 1946, the business continued to be carried on by Grinnell F. Oliver, under the same name until some time subsequent to January 1, 1946, and prior to June 13, 1946, when the assets and liabilities of the business were transferred to a successor corporation. No new partnership was formed between Grinnell F. Oliver and the Estate of James Hugh Oliver after June 14, 1944.

During each of the years 1943, 1944, and 1945, the Oliver Machine Tool Co. filed a partnership return of income and showed the total net income distributable as follows:

1943

| | |
|---|---|
| Grinnell F. Oliver | $48,820.08 |
| James Hugh Oliver | 48,820.08 |

1944

| | |
|---|---|
| Grinnell F. Oliver | 56,314.25 |
| James Hugh Oliver (deceased) | 33,668.59 |
| Estate of James Hugh Oliver, deceased | 22,645.67 |

1945

| | |
|---|---|
| Grinnell F. Oliver | 2,965.28 |
| Estate of James Hugh Oliver, deceased | 2,965.28 |

The partnership returns were prepared on an accrual basis.

9. About August 1945 the Navy Price Adjustment Board determined that renegotiation proceedings under the renegotiation act should be conducted with respect to excessive profits which the Oliver Machine Tool Co. had realized on its business for the year ended December 31, 1944. After a conference on September 18, 1945, the Oliver Machine Tool Co. on September 29, 1945, in a letter signed by Grinnell F. Oliver, partner, advised the Navy Price Adjustment Board in part as follows:

"With reference to our Renegotiation Conference on September 18, 1945, we have decided to accept your proposal to refund $25,000.00, which amount, in your opinion, constitutes excessive profits earned by this Company during the year ended December 31, 1944.

"This acceptance is made with the distinct understanding that the payments of the refund will be spread over the year 1946 in equal installments in such amounts and at such dates as you consider desirable."

On December 11, 1945, the Navy Price Adjustment Board sent to the Oliver Machine Tool Co. three copies of a proposed renegotiation agreement for execution.

When the agreement was not returned, the Navy Price Adjustment Board wrote the Oliver Machine Tool Co. on April 2 and May 14, 1946, with respect to its failure to return the executed agreement. In the letter of May 14, 1946, the Navy Price Adjustment Board stated:

"If you are still willing to enter into such agreement please execute and return three copies thereof (together with appropriate resolution of your Board of Directors) within ten days from the date hereof. Unless we receive your executed agreement within that time, we shall assume that you are no longer willing to enter into such an agreement and shall refer this case to the Chairman of the Navy Price Adjustment Board with the recommendation that he issue a unilateral determination against you."

10. On May 21, 1946, the Oliver Machine Tool Co. by G. L. Long, secretary-treasurer, replied to the letter of May 14, 1946, referred to in the preceding finding, in part as follows:

"We are somewhat at a loss to know just what to do concerning the proposed agreement, which we verbally agreed to at the time of the renegotiation. Your negotiators and officers of this company informally agreed that a price adjustment on renegotiable business during the period January 1, 1944 to June 14, 1944 was fair and proper; however, the renegotiation proceedings and the agreements that were sent to us were all subsequent to V-J Day, which resulted in the termination of all of our contracts and our losses since August 1945 were tremendous. We found conversion to peacetime production to be impossible, all of our cash resources were depleted leaving us financially inverse. * * *

"Item three of the renegotiation agreement contract states terms of payment which we are not able to meet, thus, we do not feel it proper to sign the agreement as it is so written. We readily agree to an implied liability to price adjustment during the period

January 1, 1944 to June 14, 1944 and would be willing to sign the agreement providing a revision can be made for terms of payment. We earnestly solicit your advice in this matter."

11. On June 7, 1946, the Navy Price Adjustment Board suggested to the Oliver Machine Tool Co. that it execute the agreement which would reduce the renegotiation liability to a formal debt and that the matter would then be turned over to another agency of the Navy Department which was authorized to handle collections of sums due the United States. The letter concluded with this statement:

"If you refuse to sign, this office will have to issue a unilateral order which will have much the same legal effect as an agreement."

12. On June 13, 1946, the Oliver Machine Tool Co. in a letter of transmittal signed by G. L. Long, secretary-treasurer, returned the renegotiation agreement executed by "Grinnell F. Oliver" and "Grinnell F. Oliver, Administrator of the Estate of James Hugh Oliver, Deceased". In that letter advice was furnished that the business entity theretofore existing had, subsequent to January 1, 1946, been succeeded by a corporation. As shown in finding 2, Grinnell F. Oliver's resignation as executor of the estate was approved May 28, 1945, and since May 31, 1945, John S. Woodward has been administrator of the estate of James Hugh Oliver, deceased.

The Acting Chairman of the Navy Price Adjustment Board executed the renegotiation agreement on June 24, 1946, and on June 26, 1946, forwarded a copy thereof to the Oliver Machine Tool Co. That agreement read in part as follows:

"Renegotiation Agreement, Contract No 6839:

"This agreement is entered into as of the 24th day of June, 1946, by and between the United States of America, party of the first part, (hereinafter referred to as "the Government") and Grinnell F. Oliver and Grinnell F. Oliver, as administrator of the Estate of James Hugh Oliver, deceased, parties of the second part, said Grinnell F. Oliver and James Hugh Oliver having formerly been partners doing business during the fiscal period hereinafter referred to under the firm name of Oliver Machine Tool Company, a partnership, having its principal office at Downers Grove, Illinois, (hereinafter referred to as "the Contractor").

"1. Profits To Be Eliminated. As a result of renegotiation pursuant to the Renegotiation Act, the Government and the parties of the second part hereby determine and agree that twenty-five thousand dollars ($25,000) of the profits derived by the Contractor from contracts and subcontracts of the Contractor which are subject to renegotiation under the Renegotiation Act, 50 U.S.C.A. Appendix, § 1191, (hereinafter referred to as "said contracts and subcontracts") represent the amount of profits received or accrued under said contracts and subcontracts during the fiscal period of the Contractor's beginning January 1, 1944, and ending June 14, 1944, (hereinafter referred to as "said fiscal period") which, pursuant to the Renegotiation Act, should be eliminated. * * *

"9. *Tax Credit Under Section 3806 of the Internal Revenue Code.*—The amount of profit agreed in Article 1 hereof to be eliminated has not been included in income in the Federal income tax returns for said fiscal period filed by or on behalf of the partners formerly comprising the Contractor and, accordingly, no tax credit under Section 3806 of the Internal Revenue Code, 26 U.S.C.A. § 3806, is allowed against the amount of such profits to be eliminated. In the event, however, that Federal income taxes shall be assessed upon the amount of profits agreed in Article 1 hereof to be eliminated, or any part thereof, there will be allowed the credit, if any, provided by Section 3806 of the Internal Revenue Code with respect to such profits."

In the computation of the income distributable to the partners for the calendar

year 1944, as shown in finding 8, income had been reduced on account of the creation of a reserve for renegotiation of excess profits in an amount greater than the profits eliminated under the renegotiation agreement referred to above.

13. On September 23, 1948, the day following the date when the Commissioner determined the overpayment in favor of the plaintiff for 1943, as shown in finding 6, the Navy sent the following communication to the Commissioner of Internal Revenue:

"Re: Grinnell F. Oliver and Grinnell F. Oliver as administrator of the estate of James Hugh Oliver, formerly d/b/a Oliver Machine Tool Company, Dowers Groove (sic), Illinois.

"Sirs: In accordance with our telephone conversation of 20 September 1948, you are hereby requested to withhold an amount sufficient to cover the following renegotiation indebtedness of subject firm under contract Nod–6839.

Principal indebtedness .... $25,000.00
Interest for period 7/29/46
  to 9/10/46 @ 6% on
  $18,750.00 .............. 132.53
Interest for period 9/10/46
  to 9/20/48 @ 6% on
  $25,000.00 .............. 3,045.20

    Total .............. 28,177.73

Daily interest rate........ 4.10958

"Please advise this office direct when the above amount is scheduled to the General Accounting Office for set-off against this indebtedness."

14. On December 22, 1948, the Comptroller General of the United States issued a certificate of settlement which read in part as follows:

"John S. Woodward, as administrator of the estate of James Hugh Oliver, "Gary-Wheaton Bank Building, "Wheaton, Illinois.

"I Certify there is due from the United States to the above-named claimant(s), payable from the appropriation(s) indicated, the sum of—

"Twenty-Eight Thousand One Hundred Eighty-Five and 94/100 Dollars ($28,185.94)

on account of refund of overassessment of income tax for 1943 taxable period per Schedule No. IT–137647. 20X0903 Refunding Internal-Revenue Collections

For credit to:

"'174276 Reimbursement, Excessive Profits on Renegotiated Contracts' $25,000.00

"'171100 Interest on Deferred Collections or Payments' $3,185.94

"This action is taken to effect full liquidation of contractor's indebtedness to the United States arising out of default in payment under Renegotiation Contract No. NOd–6839 of excess profits realized by the contractor for the fiscal period Jan. 1 to June 14, 1944."

15. On March 15, 1945, Grinnell F. Oliver, as executor, filed an individual income tax return for James Hugh Oliver, deceased, for the period January 1, 1944, to June 14, 1944. The income of $33,668.59 reported on that return was the decedent's distribution of income for that period from the partnership of Oliver Machine Tool Co. During 1944 payments had been made on account of that estimated tax liability for that period in the total amount of $12,990.-64. In the return as filed, request was made for the overpayment of the entire amount of estimated tax by reason of section 421 of the Internal Revenue Code, heretofore referred to in connection with the return for 1943. Shortly prior to February 18, 1946, the Commissioner determined that the entire foregoing estimated tax was refundable and on February 18, 1946, the collector communicated with the plaintiff in regard to the release to him of the check. Shortly thereafter the estimated tax payment, $12,990.64, together with interest thereon of $648.64 was refunded to the plaintiff (John S. Woodward, administrator of the estate of James Hugh Oliver) by Treasury check issued February 7, 1946.

Conclusion of Law

Upon the foregoing findings of fact which are made a part of the judgment

422

herein, the court concludes that as a matter of law the plaintiff is entitled to recover; and it is therefore adjudged and ordered that he recover of and from the United States twenty-eight thousand one hundred sixty-seven dollars and twenty-one cents ($28,167.21), together with interest thereon, as provided by law, from the dates shown in Finding 4, less the amount of six thousand six hundred twenty-eight dollars and thirty-five cents ($6,628.35) paid, as shown in Finding 6.